## KNACHEL v FERGUSON

Ohio Appeals, 2nd Dist, Franklin Co

No 3405.   Decided Nov 3, 1941

George D. Rager; Frank Koral; David S. Craig, Columbus, for plaintiff-appellant.

Thomas J. Herbert, Attorney General, Columbus; Perry Graham, Asst. Attorney General, Columbus, for defendant-appellee.

## OPINION

By GEIGER, PJ.

This matter is before this Court on an appeal upon questions of law and fact from a final judgment of the Court below.  The matter being of considerable public importance, we may detail the pleadings at greater length than would otherwise be justified.

The petition is for temporary and permanent injunction and equitable relief.  The plaintiff makes the usual recitation concerning his right to bring the action as a taxpayer on behalf of himself and all other taxpayers.

He properly describes the two defendants in their official capacity and recites the fact that Don H. Ebright and his predecessors in office, under and by virtue of §5546-7 GC, have appointed certain persons, natural and artificial, for the purpose of selling prepaid sales tax receipts to vendors duly licensed under the Sales Tax Act; that during 1940 there were 272 authorized persons selling such prepaid sales tax

receipts, appointed by the defendant treasurer and his predecessors, together with 88 county treasurers who, under the provisions of the section, had the right to sell said prepaid sales tax receipts.

It is alleged that without authority the defendant, Ebright, Treasurer, and his predecessors have caused to be paid to said persons since the enactment of §5546-7 GC, including the year 1940, the sum of $1,150,028.84 and that said payments have been made without authority and constitute an illegal diversion of funds from the public treasury. The plaintiff sets out the names and the compensation paid to certain agents individually ranging from $45,-227.91 to the smallest sum of $4,250.02. It is alleged that the treasurer has no legal authority whatever to fix and pay the compensation heretofore paid and which will continue to be paid.

Plaintiff alleges that if the court should find that the defendant, the treasurer, and his predecessors have all had the right to pay compensation that in that event said amounts paid and payments proposed to be made are unconscionable, unreasonable and unfair to the taxpayers of the State in that the general fund of the county in which said prepaid sales tax receipts are sold is being deprived of and denied such revenue as would accrue to it under §5546-7 GC; that said payments are illegal in that said officers have no legal right to pay such persons on a percentage basis or any other basis, and should the court find that said officers have the right to fix compensation the same should be fixed and determined in advance of the sale of said tax receipts and limited to a certain definite amount.

It is further alleged unless the auditor is restrained from issuing warrants, the plaintiff, as a taxpayer and all other members of his class, will suffer irreparable harm; that he has no adequate remedy at law and asks for an injunction against the auditor as well as against the treasurer.

Plaintiff says that the action is brought by him for all taxpayers and

that by reason thereof he is entitled to have his costs, including reasonable counsel fees.

The prayer is to the effect that the court grant a temporary restraining order against both the treasurer and the auditor and that upon final hearing the same may be made permanent and the prayer is made for the allowance of attorney's fees.

To this petition an amendment was filed to the effect that unless the defendants are restrained the treasurer will continue to request that the auditor issue warrants to such persons and agents without authority at law, to his irreparable harm. He asks that the restraining order apply not only to the persons appointed by the defendants but those that may hereafter be appointed.

Ebright, Treasurer, answers admitting allegations as to the plaintiff's capacity and to the fact that he and Ferguson are officials and that by virtue of §5546-7 GC, he and his predecessors in office have appointed agents both natural and artificial, for the purpose of selling prepaid sales tax receipts to vendors licensed under the Sales Tax Act. He admits that during 1940 there were 272 designated agents and in addition thereto that 88 county treasurers were authorized to make similar distribution at the various county treasuries; that since the enactment of the section, up to and including 1940, there has been paid to the agents appointed under the authority of such section by the defendant and his predecessors $1,150,028.84.

By way of affirmative defense the defendant alleges that the basis of compensation of the agents appointed under the section has been fixed by the defendant and in each instance payable from and under authority of appropriations made by law for that purpose from money specifically appropriated by the General Assembly and that at no time has the treasurer paid in excess of the amounts so appropriated or in excess of the amount properly determined on the basis fixed and that at no time has the auditor issued war-

rants on funds other than so authorized; that the defendant unless restrained will continue to certify vouchers for compensation in accordance with such basis.

The defendant Joseph T. Ferguson, Auditor, files an answer of similar import.

A reply to the answer of the treasurer and the auditor denies that payments made to the agents appointed by the treasurer have been made under authority of appropriations made or to be made by law for that purpose and from monies specifically appropriated by the General Assembly; denies that the treasurer at no time prepared vouchers in excess of the amounts appropriated but alleges that heretofore, from the emergency fund of the State, funds have been allotted to pay compensation in whole or in part to such agents.

It is stipulated by counsel that the treasurer of the state has fixed and continues to fix and pay compensation to agents heretofore appointed at the rate of 1% of the sales of prepaid sales tax receipts and that the court may consider as offered and received in evidence the action taken by the 91st General Assembly on Amended Senate Bill 16 as appears from the House and Senate journals (Volume 115, marked Exhibit "C").

On July 7, 1941, the matter came on to be heard upon the pleadings and the statement of counsel, stipulations and certain motions and the court ordered that the petition be dismissed and the injunction denied and the costs awarded against the plaintiff. A motion for new trial was filed to the effect that the decision of the court was contrary to law and the weight of the evidence and is not supported thereby; that the court erred in sustaining the defendant's motion for judgment and that it should have found for the plaintiff. This motion was overruled and upon notice of appeal being given, a bond was fixed. Very interesting briefs have been filed by counsel for both sides which the court has carefully considered.

## THE JUDGMENT OF THE COURTS BELOW

The difficulties with which this court is confronted in deciding the issues so made are well evidenced by considering the opinions rendered by two judges of the Common Pleas Court for whose judgment we have sincere respect. Each of these opinion was rendered in considering the motion for the allowance of the injunction, the first for the granting of the temporary injunction and the latter in granting the permanent injunction.

The judge considering the matter for temporary restraining order stated that the question is whether or not power and authority has been granted by the General Assembly to employ persons and compensate them for furnishing the tax receipts in question. That judge states that he has reached the conclusion that the treasurer is without authority to so compensate; that it is a very significant thing that the General Assembly repealed or amended a previous existing statute which gave power and authority to apoint and determine compensation. The judge then points out that the defendant contends that this has been taken care of by an appropriation act wherein the Assembly has appropriated a lump sum and states that he can not agree with that conclusion; that if persons are to be compensated for handling these tax receipts, the General Assembly should so declare; that the Assembly has not fixed the compensation. The judge further points to the fact that the statute specifically provided that the treasury of the county should be compensated to the extent of ½ of 1% to be retained by the treasurer for the benefit of the political subdivision; that the compensation should be fixed and not be determined by a per cent from which fact the compensation might be differently fixed in different counties of the state and the court concludes that so fixing compensation constitutes a fee. That judge, however, granted a temporary restraining order.

When the matter came on for final hearing the decision was rendered by another judge on the 27th day of June, 1941. That judge arrived at the conclusion that the agents appointed by the treasurer to sell tax receipts, under statutory authority, are not officers of the state but agents and employees and that the Legislature in amending §5546-7 GC and omitting the compensation did not intend that the services of the agents should be gratuitous, but intended compensation for said agents to be provided by appropriation acts and that this fact is manifest when the same Legislature that amended the act made an appropriation to the treasurer for the payment of personal services in administering the sales tax and that subsequent Legislatures have likewise made appropriations for the same purpose and the fact that the amended act omitted the definite authority for the treasurer to fix compensation does not affect the question of proper provision for the compensation by appropriation acts.

It will be readily detected that both views, so well expressed, can be urged with considerable force.

## THE LAW.

**Sec. 22 of Art. II of the Ohio Constitution** provides that no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law and no appropriation shall be made for a longer period than two years.

**Sec. 20, Art. II** provides that the General Assembly, in cases not provided for in the Constitution, shall fix the **compensation** of all **officers.**

The present section which gives rise to the controversy here is §5546-7 **GC,** providing in substance, that the treasurer may appoint agents for the sale of prepaid tax receipts at such places in the state as he may deem expedient and require of each such bond or other security as he may deem necessary. He shall deliver to the county treasury such numbers of prepaid tax receipts as, in his judgment, may be required for the sale in each county. The county treasurer shall retain, for the use of the general fund of the county, an amount equal to ½ of 1% of the proceeds of his sales.

The original act which was amended by the present enactment provides, so far as the compensation of the agent is concerned, that the treasurer may appoint agents for the sale of prepaid receipts at such places in the state as he may deem expedient **and fix their compensation,** payable from any appropriation to him for the purpose of administering the provisions of this act. The county treasurer shall retain for the use of his general fund of the county an amount equal to 1/10 of 1%.

It will be perceived that so far as compensation is concerned the major difference between the two enactments is that in the original act it is provided that the treasurer may appoint agents and fix their compensation, payable from any appropriation to him for the purpose of administering the provisions of this act, and that the compensation to the county treasurer shall be 1/10 of 1%. In the present act it is provided that the treasurer may appoint agents for the sale of prepaid tax receipts but nothing is said as to fixing their compensation as in the original act. The county treasurer, under the present act, is to retain for the use of the general fund of the county ½ of 1% instead of 1/10 as provided in the original act.

It is urged by plaintiff that this change in the phraseology of the two sections, one being the amendment of the other, necessarily requires the conclusion that the legislature has definitely departed from its former position that these agents were to receive a compensation. It is urged that there is a very valuable benefit flowing to those who may be appointed agents, including banks and merchandising institutions, in that profitable business will be attracted to the place where these stamps are offered for sale and that it was intended that such intangible compensation should be the re-

ward of the agent and that there should thereby be a saving to the state of large sums of money.

We can not sit in judgment as to the policy by which the state treasurer incurs for the state a rather heavy expense where it might be quite possible to secure equally efficient service simply from the right of an agent to serve the public and thereby gain valuable patronage in other lines. Neither can we criticize the policy of the treasurer in lessening the income to the county treasury which is only ½ of 1%, but which goes into the general fund by paying twice as much to others no better able to serve the public than the county treasurer. It is true that it has made it more convenient to the public to have frequent and nearby points where the stamps may be procured.

Nor are we in a position to criticize the amount of compensation to be paid, as suggested by the petition. This is a legislative function not to be controlled by a court.

The first matter that we may consider is whether we should give any consideration to the fact that the original act and the amendment thereto differ concerning compensation as an inference from which the court may draw the conclusion that under the amendment no compensation was intended. The argument that we should do so is helpful in the event that there is any difficulty in interpreting the language of the act. However, if the language of the statute is plain and needs no interpretation, there is no occasion to resort to the inference that because the Legislature has varied the language by amendment that certain conclusions may be drawn therefrom. The original enactment is found in **Ohio Law 115, Part 2, page 310,** and so far as compensation is concerned it provides that the treasurer may appoint agents * * *, "fix their compensation, payable from any appropriation to him for the purpose of administering the provisions of this act.". This act was filed with

the Secretary of State on the 14th of December, 1934.

The amendment, **116 Ohio Laws,** relates solely to §5546-7 GC, and provides as to the treasurer, "he may appoint agents for the sale of prepaid tax receipts at such places in the State as he may deem expedient", however, omitting the provision, "fix their compensation, payable from any appropriation to him for the purpose of administering the provisions of this act."

The case of **Slingluff et v Weaver, 66 Oh St 621,** holds in substance, First, the object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it. And where its provisions are ambiguous and its meaning doubtful, the history of legislation on the subject and the consequences of a literal interpretation of the language may be considered. Second, that the intent of the law makers is to be sought first of all in the language employed and if the words be free from ambiguity and doubt and express plainly, clearly and distinctly the sense of the law making body, there is no occasion to resort to other means of interpretation.

**State ex Harness v Roney, 82 Oh St 376.**

Syl. 1. * * * "The province of construction is to ascertain and give effect to the intention of the legislature, but its intention must be derived from the legislation and may not be invented by the court. To supply the intention and then give the statute effect according to such intention would not be construction but legislation."

The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed and hence no room is left for construction.

Without further discussion upon this point, we arrive at the conclusion that it is our duty to ascertain the meaning of the legislation as expressed and we

find no merit in the claim of the appellant that we ▓should ▓▓▓▓▓ resort to the omission ▪in the amendment of the. stated phrase so as to hold that such omission indicates that the legislature did not intend to pay a commission.

· We.may next give attention to the claim that there is no legislative authority for the payment of the commission. There could be no criticism of appellant's position if §5546-7 GC was the only authority for the payment of the commission as it fixes no commission nor salary nor does it provide for any payment of the same.

In support of his contention that there is no appropriation, counsel cites the case of Anderson v Commissioners, 25 Oh St 13, wherein in a short opinion by the court it is held:

"This writ must be refused. The statute under which the appointment was made, and in pursuance of which the service was rendered, makes no provision for compensation for such services. Where a service for the benefit of the public is required by law, and no provision for its payment is made, it must be regarded as gratuitous, and no claim for compensation can be enforced."

It will be perceived that in this case there was no provision of any kind for compensation.

A more ·impressive case· is that of Board v Arnold, 65 Oh St 479, wherein it is held:

⸰ "4. Under. said §2858, the county commissioners must definitely prescribe the ·compensation of such collectors, before collections are made; and that duty is not performed by prescribing that the compensation shall not exceed a certain amount, or a certain per centum."

· The statute there under consideration provided that the commissioners shall cause the· delinquent list to be publicly ṛead and "ıf they deem the same necessary, authorize the treasur-

er to employ. collectors to collect the same or any part thereof, prescribing the compensation of· such collectors which shall be paid out of the county treasury; and all such allowances shall be apportioned ratably by the county auditor among all the funds entitled to share in the distribution of such taxes. The court states, in substance, that the section provides that the commissioners shall.prescribe the compensation of the collectors and that the provision is not complied with when the commissioners prescribe that it shall not exceed a certain sum or certain per centum. They are required to fix definitely and exactly what compensation the collector shall receive. It is their judgment that is to be exercised and not the judgment of the treasurer, though limited by fixed bounds. The court, after holding the employment is void because the list was not read, states,

. "It was also void for the further reason that the commissioners failed to· prescribe his compensation. It cannot be tolerated that he make his collections, and the commissioners fix and allow his compensation thereafter. The compensation must be prescribed by·the commissioners before the collections are made."

That objection is not controlling in the case now under investigation, if we find authority for paying compensation. . Also it appears that the compensation was fixed before the sales were made.

In an act; to. make partial appropriations for the period beginning January 1. 1941, filed with the Secretary of State on the 15th of January, 1941, provisions are made for the appropriation where specific funds in the ;State . Treasury; are provided by law and it is·further· provided that, unless. ·otherwise pro-; vided by law, any sum necessary to. supply the. balance of such appropria-; tion is hereby appropriated out of any. monies in the State Treasury to the: credit of the general revenue fund;not· otherwise appropriated. In making.

provisions for the Treasurer of State in reference to sales tax, $63,000 is appropriated for salaries and for "Agents" and under the designation "F 9" the sum of $98,000 is appropriated. This appropriation was made under the provisions of Senate Bill No. 1.

At a later date in said sessions, House Bill No. 665 made an appropriation to the treasurer for the division of sales tax, among the items being,

|  | 1941 | 1942 |
|---|---|---|
| F 9 Agents | $250,000 | $250,000 |

"The above F 9 Agents' appropriation to be paid to agents appointed by the treasurer of the state in accordance with the provisions of §5546-7 of the General Assembly for the sale of prepaid tax receipts at a rate to be fixed by the treasurer of the state, not to exceed 1% of the monies paid by each of said agents to the treasurer of state arising from the sale of the prepaid tax receipts sold by each agent so appointed."

If this appropriation act is an appropriation of money for the payment of the treasurer's agents, there still remains the questions as to whether (1) Such an appropriation may be made in the appropriation act without the salary having theretofore been fixed by legislative enactment, which was not the case. (2) May the county treasurer fix compensation or should the same be fixed by legislature? (3) Is a compensation based upon a per centum, which may be varied with the wish of the treasurer, a valid appropriation of money for the purpose required?

We see no valid objection that can be made to the appropriation of a sum to be used in the payment of compensation by the appropriation act itself where there has been no prior legislative enactment fixing the amount to be paid. Counsel for appellant calls our attention to the debates of the Ohio Convention 1873-74, Volume 2, Page 288, wherein one Mr. Coates protests vigorously against the custom of passing a law as part of an appropriation bill, whereby an appropriation bill becomes a raft or life preserver to keep afloat that which is wrong. Mr. Coates' argument is good, but the trouble is the legislature has not adopted it inasmuch as it has in the present case fixed the appropriation and the maximum amount to be paid by the treasurer and appropriated money for that purpose. The appropriation act is an act of the legislature and therefore is an appropriation of money within the terms of the constitutional provisions.

While it may be much better to fix the compensation of the agent on a specific basis or upon a fixed per centum instead of "not to exceed 1%" yet we do not find that this is fatal to the efficacy of the appropriation statute.

These agents are not public officers but employees, and their compensation need not be fixed under the provisions of §20, Art. II of the Constitution.

"A public officer as distinguished from an employee must be invested by law with a portion of the sovereignty of the state and authorized to exercise functions either of an executive, legislative or judicial character."

The duty of these agents does not bring them within this definition. They are simply employees and the effect of the legislation is to appropriate money out of the State Treasury for the payment of services of those who are, by the provisions of the sections, to be appointed by the Treasurer of the State for certain specific purposes.

We are of the opinion that there is legislative authority, both for the appointment of the agents and for their compensation and that money has been appropriated for that purpose out of the state treasury in compliance with the Constitution. We are, therefore, of the opinion that the judgment in this court should be for the defendants: for their costs; the petition dismissed and the injunction dissolved.

Judgment accordingly.

BARNES and HORNBECK, JJ., concur.